IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRIAN BROADFIELD,                    §
BOP Register No. 18618-026,          §
                                     §
         Plaintiff,                  §
                                     §
V.                                   §        No. 3:22-cv-860-K-BN
                                     §
UNITED STATES OF AMERICA,            §
ET AL.,                              §
                                     §
         Defendants.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Brian Broadfield, a federal inmate incarcerated in this district, filed a *pro se* complaint against the United States and individual employees of the Federal Bureau of Prisons (BOP) under the Federal Torts Claims Act (FTCA) and for violations of his civil rights. *See* Dkt. No. 3. Broadfield also moves for a preliminary injunction. *See* Dkt. Nos. 5.

United States District Judge Ed Kinkeade referred Broadfield's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the claims against the United States, its agencies, and its employees in their official capacities should be dismissed for lack of jurisdiction; that the claims for monetary damages against the individual defendants in their individual capacities should be dismissed with prejudice; and that the request for a

preliminary injunction should be denied.

## Legal Standards and Analysis

I.    The Court should dismiss Broadfield's claims under the Federal Tort <u>Claims Act for lack of jurisdiction.</u>

Broadfield indicates that this action is for violation of his civil rights and pursuant to the FTCA. *See* Dkt. No. 3 at 1. And he sues the United States and individuals alleged to be employed by the BOP. *See id.* at 1-3.

Beginning with the FTCA, such "claims may be brought against only the United States, and not the agencies or employees of the United States." *Esquivel-Solis v. United States*, 472 F. App'x 338, 339 (5th Cir. 2012) (per curiam) (citing 28 U.S.C. §§ 2671, 2679; *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988)). The Court should therefore dismiss "for want of jurisdiction" any "FTCA claim brought against a federal agency or employee." *Id.* at 339-40 (citing *Galvin*, 860 F.2d at 183; *Atorie Air, Inc. v. Fed. Aviation Admin.*, 942 F.2d 954, 957 (5th Cir. 1991)).

And, even where the United States is named as a defendant, "[t]he United States enjoys sovereign immunity from suit, meaning it cannot be sued without consent." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017) (citations omitted). So, "[t]o maintain a suit in district court against the United States, a plaintiff must bring claims under a statute in which Congress expressly waives the United States' sovereign immunity." *Ortega Garcia v. United States*, 986 F.3d 513, 522 (5th Cir. 2021) (citation omitted); *see also Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("Sovereign immunity is indeed a jurisdictional bar." (citation omitted)).

The FTCA is such a statute. *See* 28 U.S.C. § 1346(b)(1). But "[t]he FTCA provides a limited waiver of sovereign immunity, allowing suit in federal court only when the plaintiff files an administrative claim with the appropriate federal agency within two years after such claim accrues, *and* the plaintiff either (1) obtained a written denial, or (2) did not receive a response within six months." *Hanna v. United States*, No. 20-30581 consol. with No. 21-30410, 2021 WL 5237269, at *1 (5th Cir. Nov. 10, 2021) (per curiam) (citing 28 U.S.C. § 2675(a); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995), *on reh'g in part*, 81 F.3d 520 (5th Cir. 1996)).

Accordingly, "[a]n FTCA action cannot proceed 'unless the claimant shall have first presented the claim to the appropriate Federal agency.'" *Bolton v. United States*, 946 F.3d 256, 259-60 (5th Cir. 2019) (quoting 28 U.S.C. § 2675(a)); *see also Semien v. United States*, 838 F. App'x 88, 88 (5th Cir. 2021) (per curiam) ("As a jurisdictional prerequisite under the FTCA, a claimant must exhaust his claim administratively before suing by giving notice of the claim to the appropriate federal agency." (citations omitted)). And, because compliance with Section 2675(a) "'is a prerequisite to suit under the FTCA,'" where a plaintiff "has not satisfied [this] 'jurisdictional prerequisite,' the district court properly dismisse[s the plaintiff's FTCA] claims for lack of subject matter jurisdiction." *Barnes v. Gittel*, 650 F. App'x 236, 240 (5th Cir. 2016) (per curiam) (citations and footnote omitted)).

Here, Broadfield states that he "exhausted the administrative grievance procedure as required by the P.L.R.A. and the Federal [T]ort Claims Act." Dkt. No. 3 at 5. But he provides no evidence that he filed an administrative claim with the

appropriate federal agency, the prerequisite to waiving sovereign immunity under

the FTCA. *See generally id.* And a review of Broadfield's complaint reveals no

"exceptions that would exempt [him] from this requirement." *McGraw v. Mejia*, No.

3:13-cv-740-L, 2015 WL 569002, at *5 (N.D. Tex. Feb. 11, 2015) ("The court cannot

identify any form of notice provided by Plaintiffs to the BOP that would satisfy the

requirements of the FTCA, nor can it identify any exceptions that would exempt

Plaintiffs from this requirement. Because Plaintiffs failed to provide notice to the

appropriate federal agency, the court lacks jurisdiction."); *accord Casas-Amador v.*

*FCI Seagoville*, No. 3:17-cv-2478-G-BN, 2018 WL 3763845, at *3-*4 (N.D. Tex. July

13, 2018), *rec. accepted*, 2018 WL 3756946 (N.D. Tex. Aug. 7, 2018); *see also Lopez-*

*Heredia v. Univ. of Tex. Med. Branch Hosp.*, 240 F. App'x 646, 647 (5th Cir. 2007) (per

curiam) ("The BOP's FTCA claims procedure is separate from the BOP's

administrative remedies procedure." (citing 28 C.F.R. §§ 543.30-543.32)).

II.   The Court should dismiss the claims for monetary damages against the
      individual defendants in their individual capacities with prejudice
      because Broadfield has not shown that *Bivens* should be extended to the
      <u>new context of this case.</u>

Turning to the alleged civil rights violations and Broadfield's request for

monetary damages, *see* Dkt. No. 3 at 7, a plaintiff may bring an action under *Bivens*

*v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),

"against individual [federal employees] for [an] alleged constitutional violation, but

he may not bring an action against the United States, the BOP, or BOP [employees]

in their official capacities as such claims are barred by the doctrine of sovereign

immunity," *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004)

(per curiam) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1141 (N.D. Cal. 2007) ("A *Bivens* action does not lie against federal agencies or the United States, which possess sovereign immunity; such actions may be brought only against named federal officers or agents in their personal capacity." (citing *FDIC v. Meyer*, 510 U.S. 471, 483-86 (1994))).

But *Bivens*, unlike 42 U.S.C. § 1983, is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

And the United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical

treatment." *Abbasi*, 137 S. Ct. at 1854-55.

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a '"disfavored" judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009))); *accord Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an '*ancien regime*' that freely implied rights of action. That regime ended long ago. Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area…." (citations omitted)), *cert. denied*, 141 S. Ct. 2669 (2021); *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (per curiam) ("The Supreme Court has cautioned against extending *Bivens* to new contexts." (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (*Hernandez II*); *Abbasi*, 137 S. Ct. at 1861)); *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021) ("Indeed, in recent decades, the Supreme Court has 'consistently refused to extend *Bivens* to *any* new context.'" (quoting *Malesko*, 534 U.S. at 68; citation omitted)).

So, as to whether Broadfield may assert claims against the individual defendants for alleged constitutional violations, the Court should consider the "two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Maria S.*, 912 F.3d at 784 (citation omitted); *accord Oliva*, 973 F.3d at 441-42 ("Courts confronting *Bivens* claims generally 'must ask two questions. First, do [the plaintiff's]

claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?'" (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019))); *Byrd*, 990 F.3d at 881 ("Only where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" (quoting *Hernandez II*, 140 S. Ct. at 743)).

> "The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is still an extension." *Id.* at 1864.

*Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020).

In short, "the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*." *Id.* (citing *Abbasi*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C. Cir. 2020)). And, in practice, "[v]irtually everything else" – any case falling outside the specifics of these three cases – "is a 'new context.'" *Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1865); *see also Byrd*, 990 F.3d at 883 (Willett, J., specially concurring) ("The *Bivens* doctrine, if not overruled, has certainly been overtaken." And, at least in this circuit, after *Oliva*, "'[v]irtually everything' beyond the specific facts of the *Bivens* trilogy 'is a "new context"'" …. And new context = no *Bivens* claim." (footnote omitted)).[1]

---

[1] *See, e.g.*, *Cantú*, 933 F.3d at 422-23 ("*Cantú* purports to address the first question. And he thinks he's home free because his malicious-prosecution-type-claim alleges a violation of his Fourth Amendment right to be free from unlawful

Broadfield alleges that, "in the fall of 2020," BOP medical providers began "placing consultations for [his] medical issues." Dkt. No. 3 at 8. For example, he alleges that, for his breathing issues, "the clinical director placed a consultation for pulmonology which was approved." *Id.* So the undersigned interprets "a consultation" to mean a referral to a specialist.

Broadfield further alleges that, when he was transferred to FCI Oakdale, that prison's clinical director honored Broadfield's pending referrals and further referred him to an otolaryngologist and a cardiologist. *See id.* But, after his transfer to FCI Seagoville in April 2021, with several referrals still pending, medical providers there cancelled those referrals and ordered other testing or treatment. *See id.* at 8-9.

According to Broadfield, he "has worsening conditions since he has arrived at FCI Seagoville; his breathing has worsened; his GERD has worsened; and [he] is still experiencing chest discomfort and back pain has worsened." *Id.* at 9 (cleaned up). And he alleges that "administration and medical administration and staff … are unqualified to disregard specialist orders and proscribed courses of action" and that their actions have caused him further injury, pain, and suffering. *Id.*

Insofar as Broadfield asserts that these allegations show that medical providers and officials at FCI Seagoville were deliberately indifferent to his medical

---

seizures – the same right recognized in *Bivens*. That's wrong. Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.' …. [But, w]hat if a plaintiff asserts a violation of the same clause of the same amendment in the same way? That still doesn't cut it. …. [In sum, b]y any measure, Cantú's claims are meaningfully different from the Fourth Amendment claim at issue in *Bivens*. He does not allege the officers entered his home without a warrant or violated his rights of privacy.").

needs, "[o]f the three recognized *Bivens* actions," this "case is most like *Carlson* because it involves alleged violations under the Eighth Amendment." *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (per curiam). But, "[s]imply because *Carlson* extended *Bivens* to allow an Eighth Amendment claim by a federal prisoner in that context, does not mean that [Broadfield] may rely on *Carlson* in this context." *Nabaya v. Bureau of Prisons*, No. 3:19-cv-215-L-BN, 2020 WL 7029909, at *3 (N.D. Tex. Oct. 7, 2020) (citation omitted), *rec. accepted*, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020).[2]

This is, this case meaningfully differs from *Carlson*, in which "the Supreme Court held that the Eighth Amendment gave a prisoner's estate a monetary remedy because the federal jailers caused the prisoner's death by failing to treat his asthma." *Gonzalez*, 269 F. Supp. 3d at 64. "Here, the deprivations … are vastly less serious." *Id.* Indeed, the facts that Broadfield provides reflect his disagreement with the medical care he has received since his transfer to FCI Seagoville, but it's not clear that those facts demonstrate an Eighth Amendment violation, considering that "'[d]eliberate indifference is an extremely high standard to meet'" and can only "be

---

[2] *See also Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017) ("Although the Supreme Court recognized a *Bivens* remedy under the Eighth Amendment in *Carlson*, this does not mean all Eighth Amendment claims have a *Bivens* remedy." (citing *Abbasi*, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension."); *Hernandez v. United States*, 757 F.3d 249, 272 (5th Cir. 2014) ("Instead of an amendment-by-amendment ratification of *Bivens* actions, we are bound to examine each new context – that is, each new 'potentially recurring scenario that has similar legal and factual components.'" (citation omitted)); *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007) ("*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion. Rather, they are context-specific."))).

satisfied by a 'wanton disregard for [an inmate's] serious medical needs.'" *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Specifically, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting, in turn, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992))); *see also Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) ("'[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.' Rather, 'the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."'" (citations omitted)).

So, alone, a disagreement with medical treatment or a failure to provide additional medical treatment does not constitute deliberate indifference. *See Domino*, 239 F.3d at 756; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).[3]

---

[3] *See also Petzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[I]f we were to address whether *Bivens* extends to this context in light of *Abbasi*, Petzold's deliberate-indifference claims based on denied medical treatment are likely a 'new [*Bivens*] context' because they 'differ in a meaningful way' from existing *Bivens* claims. Here, the federal officers involved were low-level, the specific actions distinct, and the alternative remedial process robust." (citations omitted)).

And, because this case presents a "next context," distinct from prior *Bivens* cases, the Court must "contemplate whether there are '<u>any</u> special factors that counsel hesitation about granting the extension.'" *Byrd*, 990 F.3d at 881 (quoting *Hernandez II*, 140 S. Ct. at 743; emphasis added); *see Butler*, 999 F.3d at 294 ("Importantly, '[e]ven before *Abbasi* clarified the special factors inquiry, we agreed with our sister circuits that the only relevant threshold – that a factor counsels hesitation – is remarkably low." (citation omitted)).

This "inquiry 'concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Butler*, 999 F.3d at 294 (quoting *Abbasi*, 137 S. Ct. at 1857-58). That is, "[t]he 'most important' *Bivens* question is 'who should decide whether to provide for a damages remedy, Congress or the courts?'" *Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 685 (5th Cir. 2021) (quoting *Hernandez II*, 140 S. Ct. at 750). And, "'[w]hen a party seeks to assert an implied cause of action under the Constitution,' as in this case, 'separation-of-powers principles ... should be central to the analysis.'" *Byrd*, 990 F.3d at 882 (quoting *Abbasi*, 137 S. Ct. at 1857).

The administration of the federal prison system qualifies as a special factor that should prevent the Court's creating an implied cause of action under *Bivens* for the context of this case. *See Petzold*, 946 F.3d at 248 n.2 ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration." (citation omitted)); *Callahan v. Fed. Bureau of Prisons*, 965

F.3d 520, 524 (6th Cir. 2020) ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'" (quoting *Abbasi*, 137 S. Ct. at 1865; citations omitted)); *Watkins*, 2021 WL 4533206, at *2 ("[T]here are special factors that counsel hesitation. The existence of the Federal Tort Claims Act weighs against inferring a new cause of action. *See Cantú*, 933 F.3d at 423 (citing 28 U.S.C. § 2680(h)). Additionally, the existence of the BOP's Administrative Remedy Program provides an alternative method of relief to *Bivens* actions. *Malesko*, 534 U.S. at 74; 28 C.F.R. § 542.10 (2001)." (citations modified)).

Accordingly, because this "case is a new context and there are special factors that counsel hesitation, [Broadfield] does not have a viable *Bivens* claim against the [individual defendants]." *Watkins*, 2021 WL 4533206, at *3.

III.    Broadfield has not shown that a preliminary injunction should be granted.

Insofar as Broadfield seeks preliminary injunctive relief under Federal Rule of Civil Procedure 65 – an order requiring FCI Seagoville officials to provide the medical care he seeks, including the previously-scheduled consultations, without delay, *see, e.g.*, Dkt. No. 3 at 7 – such relief is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (internal quotation marks omitted). *Cf. E. Ritter & Co. v. Dep't of Army Corps of Eng'rs*, 874 F.2d 1236, 1244 (8th Cir. 1989) ("[T]he FTCA provides only for money damages, not

injunctive relief."); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005) ("[T]he district court lacks subject matter jurisdiction under the FTCA to provide injunctive and declaratory relief." (citation omitted)).

An "applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted).

For the reasons set out above, Broadfield cannot show a substantial likelihood that he will prevail on the merits. *See Anderson v. Oakley*, 77 F.3d 475, 1995 WL 798510, at *1 (5th Cir. Dec. 20, 1995) (per curiam) ("The district court did not abuse its discretion in denying Anderson's motion for a preliminary injunction. Anderson failed to demonstrate a substantial likelihood of success on the merits because the district court lacked federal jurisdiction." (citations omitted)); *accord Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020).

## Recommendation

The Court should deny the request for a preliminary injunction; dismiss the claims against the United States, its agencies, and its employees in their official capacities for lack of jurisdiction; and dismiss the claims for monetary damages against the individual defendants in their individual capacities with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 20, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE